KAREN VOGEL WEIL (CA SBN 145066)
Karen.Weil@kmob.com
JONATHAN A. HYMAN (CA SBN 212264)
Jonathan.Hyman@kmob.com
REZA MIRZAIE (CA SBN 246953)
Reza.Mirzaie@kmob.com
KNOBBE, MARTENS, OLSON & BEAR LLP
1901 Avenue of the Stars, Suite 1500
Los Angeles, California  90067
Telephone:  (310) 551-3450
Facsimile:  (310) 551-3458
Attorneys for Plaintiff
JELLY BELLY CANDY COMPANY

DOUGLAS L. HENDRICKS (CA SBN 83611)
DHendricks@mofo.com
CATHARINE B. BAKER (CA SBN 210011)
CBaker@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522
Attorneys for Defendants
ARAN CANDY LTD. and SWEETSTALL.COM LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JELLY BELLY CANDY COMPANY, a California corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>ARAN CANDY LTD., an Irish corporation, SWEETSTALL.COM LTD., a British corporation, and DOES 1 through 100, inclusive,<br><br>                    Defendants. | Case No. CV 07-05260 MHP<br><br>**SUPPLEMENTAL JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER THEREON**<br><br>**Case Management Conference:**<br>Date:          August 25, 2008<br>Time:          4:00 p.m.<br>Courtroom:   A, 15th Floor<br><br>The Hon. Marilyn H. Patel<br><br>Complaint Filed:  October 16, 2007 |

1    Pursuant to the Court's Orders of March 13, 2008, May 27, 2008, and July 8, 2008, and

2    Local Rule 16-9(a), Plaintiff Jelly Belly Candy Company ("Jelly Belly") and Defendants Aran

3    Candy Ltd. and Sweetstall.com Ltd. (collectively "Defendants") hereby submit this Supplemental

4    Joint Case Management Statement.

5    On March 12, 2008, the parties appeared before the Court for a Case Management

6    Conference.  At that Conference, the parties informed the Court that they intended to pursue

7    private mediation.  Based on that representation, the Court extended all dates pending the

8    mediation.  On May 15, 2008, the parties participated in mediation before Hon. Edward A.

9    Infante (Ret.) of JAMS.  After the mediation, the parties continued discussions in an effort to

10    resolve their disputes.  Despite these efforts, the parties have not been able to settle this matter.

11    **I.        PLAINTIFF'S POSITION REGARDING CASE MANAGEMENT.**

12    This is a trademark and trade dress infringement case relating to jelly beans.  Jelly Belly

13    accuses both Defendants of infringing numerous registered and common law trademarks which

14    Jelly Belly owns, including the following:

15

16    1.    Jelly Belly's logo ;

17    2.    Jelly Belly's menu, which displays the flavors of Jelly Belly's jelly beans on its

18          packaging and in its promotional materials;

19    3.    Certain names for Jelly Belly jelly bean flavors;

20

21    4.    A humanized jelly bean character , which Jelly Belly uses on its packaging,

22          advertising and point of sale materials; and

23

24    5.    The trade dress of Jelly Belly's jelly beans.

25    Especially because this lawsuit has been pending for ten months, Plaintiff believes dates

26    should now be set for further proceedings and that the lawsuit should move forward.

27

28

1    In Section II below, Defendants contend that any case schedule set by this Court should

2    severely limit discovery solely "to the amount of monetary relief to which Jelly Belly would be

3    entitled if it were to prevail on its claims as alleged in the Complaint." The basis for Defendants'

4    proposal is that, while refusing to concede liability or wrongdoing, they claim they are willing to

5    enter into an injunction and to an accounting of profits. As a result, they claim, "this case [does

6    not] justif[y] further expenditure of the parties' or the Court's resources."

7    Defendants' proposal should be rejected for numerous reasons. First, although this case

8    has been pending for quite some time, absolutely no discovery has even been propounded in this

9    case and the discovery period has not even opened. Therefore, it is entirely premature for Jelly

10   Belly to assess Defendants' proposal of a limited injunction and accounting of profits. While

11   Jelly Belly remains hopeful that this case may eventually settle, Jelly Belly should, at least, be

12   entitled to take discovery relating to all the issues in the case to evaluate and ascertain the full

13   extent of Defendants' infringing activities.

14   Second, while Defendants have indicated their willingness to enter into an injunction, they

15   have emphasized that any such injunction would be without a concession or determination of

16   "any liability or wrongdoing." For over three years, Jelly Belly has persistently asserted its

17   allegations of infringement against Aran to little avail. Not only have the parties been unable to

18   resolve their differences, but Aran continues to violate Jelly Belly's rights. As a result, Jelly

19   Belly wants, and is entitled, to seek an adjudication that Defendants' activities constitute

20   trademark and trade dress infringement, false designation of origin, unfair competition, and

21   trademark and trade dress dilution. It wants, and is entitled to, its day in court to vindicate its

22   rights. An adjudication of liability would obviously be very beneficial to Jelly Belly. For

23   example, it would provide res judicata benefits in future disputes between the parties. 6 J.

24   THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, §§ 32:81 (4th

25   Ed. 2008); *see also Nasalok Coating Corp. v. Nylok Corp.,* 522 F.3d 1320, 1323-24; 1328-30

26   (Fed. Cir. 2008). An adjudication of liability could further provide the benefits of collateral

27   estoppel in future disputes between the parties. Restatement (Second) of Judgments § 37 (2008);

28   *see also Roche Palo Alto, LLC v. Apotex,* Inc., 526 F. Supp. 2d 985, 994-97 (N.D. Cal 2007).

1    These benefits would not be available to Jelly Belly under a settlement agreement lacking a clear

2    concession or determination of liability.  *See Liberto v. D.F. Stauffer Biscuit Co., Inc.*, 441 F.3d

3    318, 326-28 (5th Cir. 2006) (holding that settlement agreement that lacked a clear expression of

4    trademark infringement was not entitled to full res judicata effect); *Chromalloy Am. Corp. v.*

5    *Kenneth Gordon (New Orleans) Ltd.,* 736 F.2d 694, 695-98 (Fed. Cir. 1984) (determining that

6    neither issue preclusion nor claim preclusion can apply from a consent decree in prior trademark

7    infringement litigation between the parties because no issues were judicially resolved).

8    Moreover, if Jelly Belly obtains an adjudication in its favor, such that Defendants are found to

9    infringe some or all of Jelly Belly's rights, Defendants will have an obligation to move farther

10   away from Jelly Belly's marks than would a first-time infringer.  5 J. THOMAS MCCARTHY,

11   MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 30:21 (4th Ed. 2008) ("A trademark

12   infringer, once caught, should expect some fencing in.  It should have its conduct carefully

13   scrutinized in future use and should not be allowed to claim the same leniency accorded a good

14   faith user who starts use of the mark which the enjoined defendant has shifted to."); *see also*

15   *Plough Inc. v. Kreis Labs*., 314 F.2d 635, 639 (9th Cir. 1963); *Sinhdarella, Inc., v. Vu,* No. C 07-

16   4353, 2008 WL 410246 at *7-8 (N.D. Cal. February 12, 2008).  Clearly, these benefits would all

17   provide Jelly Belly with the protection it has been seeking and assurances against future

18   impingement of its goodwill and intellectual property.  Jelly Belly should not be forced,

19   especially at this very early stage of this litigation, to forfeit its rights.

20          Third, contrary to Defendants' suggestion, the scope of the injunction offered by

21   Defendants is not as broad as Jelly Belly could obtain if it prevails, nor is it even as broad as the

22   injunctive relief generally identified in the Complaint.  Specifically, Defendants' proposed

23   injunction is silent with respect to certain allegations made in the Complaint and, therefore, does

24   not cover entire categories of activities which Jelly Belly seeks to enjoin.  For example, as set

25   forth below in Section II, Defendants seek to limit any injunction to Aran's logos, humanized

26   jelly bean character, menu and flavor names.  However, in its Complaint, Jelly Belly also alleged

27   infringement of its trade dress.  Defendants' proposed injunction is silent with respect to those

28   allegations.  Further, Defendants' proposed injunction does not have any restrictions on

1    Defendants engaging in acts of unfair competition, making false and misleading statements, or

2    engaging in acts of dilution, as alleged in the Complaint.  In addition, even the specific language

3    proposed in Defendants' injunction is narrower than the scope of any injunction Jelly Belly would

4    expect to obtain if it prevails on the claims alleged in the Complaint and is also narrower than that

5    set forth in the prayer for relief.  For example, Defendants propose that they will not use Aran's

6    jelly bean character  "or any other '***humanized***' jelly bean character that is confusingly

7    similar to the humanized jelly bean that is the subject of United States Trademark Registration

8    No. 1,337,901."  However, Jelly Belly would expect its injunction to not be limited to a

9    "humanized" jelly bean character, but would cover ***any*** character that is confusingly similar to

10   Jelly Belly's humanized jelly bean character.  As another example, while Jelly Belly's prayer for

11   relief sought an injunction enjoining "Defendants, their officers, agents, servants, employees and

12   attorneys, and those persons in active concert or participation with Defendants from directly or

13   indirectly engaging in certain activities," the injunction Defendants propose is limited to

14   Defendants and is silent on the issue of indirect activities.

15          Fourth, with respect to Defendants' assertions regarding damages, Jelly Belly should not

16   now be forced to limit its monetary recovery to Defendants' offer.  In Section II below,

17   Defendants emphasize that this case is only about "packaged jelly beans."  At this preliminary

18   stage, Jelly Belly should not be forced to accept Defendants' representations that their infringing

19   activities are limited to "packaged" goods or the extent of sales of those "packaged" goods.  For

20   example, Aran, to this day, uses at least some of its infringing marks on its website, which is

21   accessible in the United States.  Moreover, Defendants' offer to allow an accounting ignores that,

22   in the Complaint, Jelly Belly's claim for damages was not limited to an accounting of

23   Defendants' profits, but also included "all damages that Jelly Belly has sustained as a

24   consequence of the acts complained of," treble damages, costs, attorney fees, expenses and

25   exemplary damages.

26          Fifth, Defendants seek to unilaterally remove all the liability issues in this case by arguing

27   that they are now "effectively moot."  But, unless the parties so stipulate (and Jelly Belly is not

28   willing to do so) or there has been an adjudication on the merits, the case is not moot and this

1  Court should not, and cannot, narrow the scope of issues to be litigated at this stage in the case.

2  Defendants' mootness argument appears to be premised on the notion that they or this Court can

3  force Jelly Belly to accept their settlement offer. But federal courts have "no authority to force a

4  settlement." *Goss Graphics Sys., Inc. v. DEV Indus., Inc.,* 267 F.3d 624, 627 (7th Cir. 2001); *see*

5  *also Kakani v. Oracle Corp.,* 2007 WL 1793774, No. C 06-06493 WHA, at *11 (N.D. Cal June

6  19, 2007) ("The Court, of course, cannot force an unwanted settlement on anyone."). To the

7  contrary, a party's "desire for a trial must be respected." *Sloan v. State Farm Mut. Auto. Ins. Co.,*

8  360 F.3d 1220, 1227 (10th Cir. 2004). Accordingly, there is no basis upon which this Court can

9  now eliminate all the liability issues and restrict this case solely to evidence relating to an

10  accounting of Defendants' profits.

11         The cases Defendants cite in support of their assertions that Fed. R. Civ. P. 16 permits this

12  Court to eliminate issues at this stage of the proceedings are entirely inapposite. Importantly, not

13  one of these cases supports the elimination of issues and related discovery, where, as here, the

14  parties do not agree to their elimination, and there has been no adjudication on the merits after

15  relevant discovery and full briefing. To the contrary, the cases on which Defendants rely stand

16  for the unremarkable notions that discovery can be phased; questions of law can be ascertained;

17  or issues can be adjudicated after full discovery and briefing and in accordance with summary

18  judgment standards set forth in Fed. R. Civ. P. 56. *See Morgan v. Ford Motor Co.,* No. 06-1080,

19  2007 U.S. Dist. LEXIS 36515, *43-44 (D.N.J. May 17, 2007) (issuing order to proceed with

20  phased discovery on claims made by over 700 plaintiffs by beginning with a representative

21  sample of 5 plaintiffs and noting that if the bellwether plaintiffs' claims survive summary

22  judgment motions, plenary discovery for the remaining plaintiffs would follow); *In re Airport*

23  *Car Rental Antitrust Litig.,* 474 F. Supp. 1072, 1109 (N.D. Cal. 1979) (defining how plaintiff is to

24  meet its burden of proof on damages and not eliminating any issues); *N. Jackson Pharm. v.*

25  *Caremark Rx, Inc.*, 385 F. Supp. 2d 740, 743 (N.D. Ill 2005) (determining the proper legal

26  standard to be applied to plaintiff's Sherman Act claim based on undisputed facts, but not

27  eliminating any issues from case); *Premier Transport, Ltd. v. Nextel Communs.*, No. 02-4536,

28  2003 U.S. Dist LEXIS 9141, *5-6 (N.D. Ill. May 30, 2003) (barring the plaintiff from seeking

1    consequential damages by determining, under a summary judgment standard *after all relevant*

2    *fact discovery had been completed*, that no triable claim for such damages existed).  Defendants

3    distort Rule 16 to justify their attempt to deprive Jelly Belly of its right to seek redress for all of

4    its claims and its right to its day in court.

5        In short, Defendants' assertion that "[g]iven the breadth of the relief to which Aran is

6    willing to consent, and the small monetary value at stake in this action, Jelly Belly's claims are

7    virtually moot" is unsupported and unsupportable.  Contrary to Defendants' belief that the case

8    can be reduced to an adjudication of a single issue regarding "the determination of the monetary

9    relief to which Jelly Belly would be entitled," there is far more at stake for Jelly Belly than

10   monetary damages.  Consequently, and especially because Defendants' request would deprive

11   Jelly Belly of its fundamental right to seek and obtain an adjudication on the merits, Defendants'

12   proposal should be rejected and this Court should impose the schedule set forth in Section 17.

13   **II.    DEFENDANTS' POSITION REGARDING CASE MANAGEMENT.**

14       Defendants believe the case should proceed only as to limited issues and case

15   management dates set accordingly.  As explained more fully below, without conceding any

16   liability or wrongdoing, Defendants will consent to entry of a permanent injunction that, despite

17   Jelly Belly's posturing above, would grant Jelly Belly all of the injunctive relief requested in its

18   Complaint.  Defendants are also willing to consent to Jelly Belly's request for an accounting and

19   disgorgement of profits from the sales of any allegedly infringing products.  This accounting, by

20   definition, would provide Jelly Belly with the very discovery it claims above to need in order "to

21   evaluate and ascertain the full extent of Defendants' [alleged] infringing activities."  In light of

22   Defendants' willingness to consent to the injunctive relief requested by Plaintiff, as set forth

23   below, the only issue remaining for adjudication would be monetary relief, which is simplified by

24   Defendants' willingness to agree to an accounting of profits.

25       Given the breadth of relief to which Defendants are willing to agree, and the small gross

26   dollar value of packaged product sales in the United States at issue (about $47,000 for defendant

27   Aran, perhaps as little as $250 for defendant Sweetstall), this case cries out for the Court to

28   narrow the issues going forward.  Jelly Belly has offered no reasonable justification for further

1    expenditure of the parties' or the Court's resources.  Instead, Jelly Belly's insistence on full

2    adjudication suggests that Jelly Belly wishes to continue this litigation not to obtain the relief it

3    seeks in its Complaint, but instead to obtain an inappropriate collateral competitive advantage.

4    Moreover, there is far more at stake in the action pending in the United Kingdon, described

5    below.  The only other plausible explanation for Jelly Belly's position is its wish to have the costs

6    of this action provide it with an inappropriate advantage, divorced from the merits, in the U.K.

7    action.  Neither motive justifies further expenditure of the Courts' or the parties' resources.

8    　　　　Defendants therefore request that the Court issue a Pretrial Order pursuant to Rule 16

9    limiting discoverable issues to the amount of monetary relief to which Jelly Belly would be

10   entitled if it were to prevail on its claims as alleged in the Complaint.[1]

11   **A.    Defendants Agree to Broad Injunctive Relief.**

12   　　　　This case involves claims of trademark and trade dress infringement under the laws of the

13   United States relating to sales of packaged jelly beans in the United States.  Defendant Aran sold

14   packaged jelly beans in the United States for a short time.  Its sales have long since ceased, and its

15   total U.S. sales amounted to approximately $47,000.  Defendant Sweetstall is an online candy

16   retailer that sold Aran products.  Sweetstall's total U.S. sales of Aran packaged goods were

17   nominal—currently believed to amount to less than $250.  In its Complaint, Jelly Belly alleges

18   that: (1) Aran's logos for use in the United States are confusingly similar to Jelly Belly's logo

19   (Compl. ¶¶ 26, 50, 58, 80); (2) Aran's humanized jelly bean character is confusingly similar to

20   Jelly Belly's U.S. trademark registration for a humanized jelly bean character (Compl. ¶¶ 29, 50,

21   58, 80); (3) Jelly Belly has trademark rights in its jelly bean "menu" and Aran's jelly bean menu

22   infringes on these rights (Compl. ¶¶ 27, 59); (4) Jelly Belly has trademark rights in its jelly bean

23   flavor names and Aran's use of those names infringes on these rights (Compl. ¶¶ 28, 59); and

24   (5) Jelly Belly has trade dress rights in its jelly beans themselves when used with two or more of

25

26

27   　　　　[1] Unless otherwise indicated, all references to rules hereinafter are to the Federal Rules of Civil Procedure.

28

1    the preceding four items (1)-(4), and Aran's jelly beans infringe on these rights (Compl. ¶¶ 23,

2    25, 30, 59).  Jelly Belly's Complaint seeks injunctive relief and damages, *inter alia*.

3         Without conceding any liability or wrongdoing, Defendants are willing to consent to a

4    permanent injunction that addresses these allegations of infringement in the Complaint.

5    Specifically, Aran is willing to agree not to use any of the following in connection with the

6    marketing, sale, or promotion of its jelly beans in the United States:

7

8    (a)    the "Jelly Bean Planet Logo"   or the "Revised Planet Logo"  or

9          any logo that is confusingly similar to the logos that are the subject of United

10         States Trademark Registration Nos. 1,232,091; 1,203,786; and 2,836,178; and

11         California Trademark Registration No. 62,724;

12

13   (b)    a menu consisting of colored depictions of lifelike jelly beans in rows and columns

14         and with corresponding names adjacent to the jelly bean depictions;

15

16   (c)    Aran's jelly bean character          ("Aran Jelly Bean Character") or any other

17         "humanized" jelly bean character that is confusingly similar to the humanized jelly

18         bean that is the subject of United States Trademark Registration No. 1,337,901; or,

19   (d)    any of the following jelly bean flavor names:  Buttered Popcorn, Sizzling

20         Cinnamon, Toasted Marshmallow, Crushed Pineapple, or Island Punch.

21   Such an injunction precisely addresses Jelly Belly's allegations regarding trade dress

22   infringement in the Complaint.  Defendants also consent to the destruction of any allegedly

23   infringing products in their possession within the United States.  Furthermore, Sweetstall offers

24   not to market, sell, or promote any Aran jelly bean product in the United States that would violate

25   the terms of the injunction set forth by Aran.

26        By consenting to such a broad injunction, on terms Defendants believe Jelly Belly could

27   never obtain by adjudicating the merits of this case, Defendants are providing all the injunctive

28

1   relief Jelly Belly seeks in its Complaint, Jelly Belly's contentions in Section I to the contrary

2   notwithstanding.  For example, Jelly Belly claims that the injunction does not cover the

3   allegations of trade dress infringement when, in fact, the injunction prohibits Aran from

4   infringing the trade dress as alleged.  As explained above, Jelly Belly alleges that Defendants

5   infringe its trade trade dress by using jelly beans in conjunction with any *two or more* of the

6   following:  an existing Aran logo, a humanized jelly bean character, a menu, or certain flavor

7   names.  The injunction prohibits Aran from using *any* of those four features, thereby making

8   impossible any further trade dress infringement that Jelly Belly alleges.

9       Jelly Belly also claims that the injunction fails to keep Defendants from "engaging in acts

10   of unfair competition, making false and misleading statements, or engaging in acts of dilution, as

11   alleged in the Complaint."  Yet the injunction prohibits Defendants from engaging in all of the

12   conduct of which Jelly Belly complains in its Complaint.

13       Further, although Jelly Belly might "expect" the injunction to cover more than use of a

14   humanized jelly bean character, the Complaint provides no basis for such an expectation.  Jelly

15   Belly's Complaint only alleges infringement of Jelly Belly's "humanized" jelly bean character by

16   Defendants' "humanized" jelly bean character.  (*See, e.g.,* Compl. ¶¶23, 29.)

17       Finally, Jelly Belly claims the injunction is incomplete because it does not expressly

18   enjoin Defendants *and* their officers, agents, servants, employees and attorneys, *inter alia*.  Had

19   Jelly Belly only proposed this or similar coverage during the six weeks it had to consider

20   Defendants' injunctive proposal, this minor point could easily have been addressed.  It should not

21   be the one basis on which Jelly Belly can push forward with costly discovery where there is no

22   real dispute.

23       In short, given the extremely small amount of U.S. sales and the extremely broad scope of

24   injunctive relief to which Defendants are willing to agree, there is little left for the parties to

25   litigate.

26

27

28

1           **B.**    **The Monetary Relief Available to Jelly Belly Does Not**
                     **Justify Further Litigation of This Action.**

In a trademark infringement case such as this, under 15 U.S.C. § 1117(a), a plaintiff may recover monetary damages in the form of (1) a disgorgement of the defendant's profits after an accounting, (2) actual damages sustained by the plaintiff, and (3) the costs of the action. 15 U.S.C. § 1117(a). For a disgorgement through an accounting, the plaintiff must prove defendant's sales from the alleged infringement, and the defendant must prove all elements of costs or deductions from those sales. *Id.* For actual damages sustained by the plaintiff, "[d]amages are typically measured by any direct injury which a plaintiff can prove, as well as any lost profits which the plaintiff would have earned but for the infringement." *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 620-21 (9th. Cir. 1993) (citation omitted). An alternative measure of lost profits is the award of a theoretical reasonable royalty that the defendant would have paid plaintiff to license the mark. *Trovan, Ltd. v. Electronic Identification Servs.*, No. 98-0094, 2000 U.S. Dist. LEXIS 7522, **51-52 (C.D. Cal. May 23, 2000) (finding royalty award is disfavored in infringement cases where plaintiff had been unwilling to license its mark because the court must speculate as to a license agreement the parties never negotiated). Courts typically do not award both damages as both plaintiff's lost sales and defendant's disgorgement of profits attributable to sales under the infringing mark. *Nintendo of Am. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994). The successful plaintiff is ordinarily put to an election of remedies between them to prevent an inappropriate double recovery. *Id.*

Under any measurement of monetary damages available to Jelly Belly for trademark infringement, the potential recovery to Jelly Belly is small. Aran has had almost no packaged product business in the United States. Except for a brief foray into the United States market from approximately May 2004 to approximately July 2006 under the brand name "The Jelly Bean Planet," Aran has made no effort to market its packaged products in the United States; in fact the "Jelly Bean Factory" logo complained of by Jelly Belly has never been used on packaged products purposely marketed in the United States. Furthermore, as the result of Jelly Belly's expressing its concerns to Aran, Aran cleared all its stocks of "The Jelly Bean Planet" branded

1    jelly bean packaging and completely stopped marketing packaged goods in the United States.

2    Although Aran's Web site might include logos to which Jelly Belly objects and that Web site is

3    accessible in the United States, that site, www.jellybeanfactory.com, also clearly states next to

4    every Aran packaged product offered that the products are "NOT FOR SALE TO CUSTOMERS

5    IN THE USA."  Nor are Defendants aware of any means through which customers in the U.S. can

6    purchase Aran packaged products on-line.  Thus, this litigation, which only concerns sales within

7    the United States, is over alleged infringement damages on past sales of approximately $47,000.

8         Like Aran, defendant Sweetstall.com is also a small, family-run company—the owners,

9    Sally Rimmington and her husband Philip Rimmington, are also the only two full-time

10   employees—headquartered in Essex, England.  As far as Defendants can determine, Sweetstall

11   was only brought into Jelly Belly's lawsuit against Aran because Sweetstall accidentally sold a

12   handful of packages of Aran's "The Jelly Bean Factory" branded gourmet jelly beans to

13   customers in the United States.  Sweetstall believes that its total sales of Aran jelly beans in the

14   Unites States amounted to less than $250.

15        Defendants' accounting and disgorgement, by definition, will provide Jelly Belly with the

16   information it claims above to need "to evaluate and ascertain the full extent of Defendants'

17   [alleged] infringing activities."  Furthermore, discovery on the scope Defendants propose herein

18   would allow Defendants to discover from Jelly Belly all other damages Jelly Belly claims to have

19   sustained.

20        In short, given the minor dollar value of product sales at issue here, none of the

21   permissible measures of monetary relief available under the law justify the disproportionately

22   high transactions costs of adjudication of the merits.[2]

23

24

25

26   _____

     [2] Defendants have offered Jelly Belly a monetary payment that Defendants believe
27   exceeds any sum Jelly Belly could reasonably expect to obtain by pursuing damages in this case,
     but Jelly Belly declined to respond to that offer.

28

**C.    The Court Can and Should Narrow the Scope of Issues to be Litigated.**

Given the breadth of the relief to which Aran is willing to consent, and the small monetary value at stake in this action, Jelly Belly's claims are virtually moot and should consume no further resources of the Court or the parties for full adjudication on the merits.  The Court can and should narrow the scope of issues to be litigated.

Under Rule 16, the Court has authority to "take appropriate action" in "formulating and simplifying issues, and eliminating frivolous claims or defenses," and "facilitating in other ways the just, speedy, and inexpensive disposition of the action."  Fed. R. Civ. P. 16(c)(2)(A), (P). Pursuant to Rule 16, district courts have "wide discretion over the management of discovery" and the "power to fashion case management orders and structure discovery in ways that will enable cases to continue efficiently through the litigation process."  *Morgan v. Ford Motor Co*., No. 06-1080, 2007 U.S. Dist. LEXIS 36515, *29-30 (D. N.J. May 17, 2007) (issuing pretrial order establishing bellwether plaintiffs and manner in which phased discovery would proceed on limited issues) (citations omitted); *see also In re Airport Car Rental Antitrust Litig.*, 474 F. Supp. 1072, 1109 (N.D. Cal. 1979) (granting Rule 16 motion to simplify issues by determining burden of proof for damages); *North Jackson Pharmacy v. Caremark Rx, Inc*., 385 F. Supp. 2d 740, 743 (N.D. Ill. 2005) (granting Rule 16 motion to narrow issues by order establishing, as a matter of law, the rule of reason standard applicable to claims in the complaint); *Premier Transport, Ltd. v. Nextel*, No. 02-4536, 2003 U.S. Dist. LEXIS 9141, *5-6 (N.D. Ill. May 30, 2003) (granting Rule 16 motion to bar plaintiff from seeking consequential damages).  Plaintiff has cited no cases to the contrary.  This Court, therefore, has authority to issue a Pretrial Order limiting issues to be litigated as Defendants propose to promote a just, speedy, and efficient resolution of this case.

In sum, although Defendants dispute Jelly Belly's contentions, Defendants' agreement to consent to injunctive relief, to destroy any allegedly infringing goods within the United States, and to account for any profits from sales of the accused goods to Jelly Belly effectively moots the case.  Jelly Belly disagrees, claiming that it should still have "its day in court to vindicate its rights."  Jelly Belly wants some determination of past wrongdoing, or, as the Complaint alleges,

1    an order adjudging Defendants to have engaged in trademark infringement, dilution, and unfair

2    competition *in the past*. (Compl. ¶¶A-H.) Yet declaratory relief is available only where there is a

3    prospect that the offending activity will continue in the future. Declaratory judgment is not

4    appropriate where, as here, "the remedy sought is a mere declaration of law without implications

5    for practical enforcement upon the parties in the future." *S. Jackson & Son, Inc. v. Coffee, Sugar*

6    *& Cocoa Exchange, Inc*. 24 F.3d 427, 431 (2d Cir. 1994); *San Diego County Gun Rights*

7    *Committee v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) (declaratory relief "is appropriate to

8    declare rights between the parties only where there is a very significant possibility of future harm;

9    it is insufficient . . . to demonstrate only a past injury."); *Kirby  v. City of Elizabeth City*, 388 F.3d

10   440, 452 n.10 (4th Cir. 2004) ("[A]bsent any expected practical effect of the requested

11   declaratory relief . . . a claim for such relief is not sufficient to create a case or controversy for

12   Article III purposes.").

13          In fact, the only issue remaining for adjudication is the determination of the monetary

14   relief to which Jelly Belly would be entitled had it prevailed on its claims against Defendants. As

15   a result, there is no justification for the disproportionately high transactions costs to the parties

16   and the Court from full adjudication on the merits. Defendants request that the Court issue a

17   Pretrial Order pursuant to Rule 16 limiting discoverable issues to the amount of monetary relief to

18   which Jelly Belly would be entitled if it were to prevail on its claims as alleged in the Complaint.[3]

19

20          [3] On July 7, 2008, Defendants proposed to Jelly Belly the injunction and additional relief
     discussed in Section II below. In response, Jelly Belly sought, and Defendants' agreed to, an
21   extension of time for filing this Supplemental Joint Case Management Statement to August 18,
     2008, so Jelly Belly could consider Defendants' proposal. For five weeks Jelly Belly remained
22   silent. On August 11, a full week before this Supplemental Joint Case Management Statement
     was due for filing, Defendants submitted to Jelly Belly again Defendants' proposal in the form of
23   Section II below, and invited timely comment from Jelly Belly. Jelly Belly again was silent for a
     week. Not until shortly after 12:30 p.m. on August 18, the day this CMC statement was due, did
24   Jelly Belly provide any response to Defendants' proposal, which came in the form of Jelly Belly's
     statement in Section I herein. Because Jelly Belly has provided its position on case management
25   to Defendants only hours before this statement is due to be filed, Defendants have had insufficient
     time in which to respond fully to the points Jelly Belly raises in Section I. Accordingly, should
26   the Court be inclined to adopt Jelly Belly's position on case management, Defendants respectfully
     request the Court set a briefing schedule to allow both parties a fair opportunity to address the
27   issues fully.

28

### III.    FURTHER CASE MANAGEMENT STATEMENT PURSUANT TO LOCAL RULE 16-9(a).

**1.    <u>Jurisdiction and Service</u>**

This Court has jurisdiction over the subject matter of the federal claims pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121.  This Court has jurisdiction over the remaining claims under 28 U.S.C. § 1367(a).  Defendants do not dispute this basis for jurisdiction.  No issues exist with regard to personal jurisdiction as Defendants have waived service of summons and there are no other named parties to be served.  Defendants do not contest that venue is proper.

**2.    <u>Facts</u>**

This is a trademark and trade dress infringement case relating to jelly beans.  At issue in this lawsuit are numerous registered and common law trademarks which Jelly Belly contends it owns, including the following:

6.    Jelly Belly's logo  ;

7.    Jelly Belly's menu, which displays the flavors of Jelly Belly's jelly beans on its packaging and in its promotional materials;

8.    Certain names for Jelly Belly jelly bean flavors;

9.    A humanized jelly bean character  , which Jelly Belly uses on its packaging, advertising and point of sale materials; and

10.    The trade dress of Jelly Belly's jelly beans.

Defendants dispute that any Aran logo, jelly bean menu on Aran jelly bean packaging, or humanized jelly bean character on Aran jelly bean packaging is confusingly similar to Jelly Belly's logo, menu, or humanized jelly bean character.  Aran further disputes that it is intentionally selling its jelly beans in Aran jelly bean packaging in the United States.

1    **3.    Legal Issues**

2         <u>Plaintiffs' Statement</u>:  The disputed issues set forth below by Jelly Belly are not meant to

3    be final or exhaustive, and both parties reserve their rights to reformulate these issues or include

4    other appropriate issues as they develop or become known to the parties through the course of

5    discovery and investigation.

6         1.    Whether Defendants' acts constitute trademark infringement under Section 32(1)

7    of the Lanham Act, 15 U.S.C. § 1114.

8         2.    Whether Defendants' acts constitute false designations or origin, unfair

9    competition, and trade dress infringement under Section 43(a) of the Lanham Act, 15 U.S.C.

10   § 1125(a).

11        3.    Whether Defendants' acts constitute trademark and trade dress dilution under

12   Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

13        4.    Whether Defendants' acts constitute trademark and trade dress infringement under

14   California Business & Professions Code § 14335 and California common law.

15        5.    Whether Defendants' acts constitute unfair competition under California

16   Business & Professions Code § 17200 and California common law.

17        6.    Whether Defendants' acts constitute false or misleading statements under

18   California Business & Professions Code § 17500 and California common law.

19        7.    Whether Defendants' acts constitute trademark dilution under California

20   Business & Professions Code § 14330 and California common law.

21        <u>Defendants' Statement</u>:  As explained more fully above, although Defendants dispute

22   Plaintiff's contentions, Defendants' agreement to consent to injunctive relief and an accounting

23   effectively moots the case and makes adjudication of the issues proposed by Jelly Belly wasteful

24   and unnecessary.  Defendants believe the Court should narrow the remaining issues requiring

25   further litigation of this action to the determination of the monetary relief to which Jelly Belly

26   would be entitled if it were to prevail on its claims as alleged in the Complaint.

27

28

**4.** **Motions**

There are no prior or pending motions.  The parties are evaluating what, if any, motions may be filed in the future.

**5.** **Amendment of Pleadings**

The parties currently do not contemplate any amendments to the pleadings.

**6.** **Evidence Preservation**

Counsel for all parties have given their respective clients document retention instructions for all categories of potentially relevant documents, including electronically-stored information.

**7.** **Disclosures**

Jelly Belly proposes that initial disclosures be made 30 days after the Case Management Conference.

Defendants propose initial disclosures be made 30 days after entry of a Pretrial Order of this Court limiting the scope of disclosures and discovery to the determination of the monetary relief to which Jelly Belly would be entitled if it were to prevail on its claims as alleged in the Complaint.

**8.** **Discovery**

To date, the parties have not taken any discovery and the Court has not set a discovery schedule.

Jelly Belly proposes the following discovery plan:

a.      Jelly Belly expects the parties will agree to entry of a protective order governing documents and information to be disclosed in the course of this litigation.  Jelly Belly expects to serve on Defendants interrogatories, requests for documents and deposition notices.

b.      Jelly Belly does not anticipate proposing any changes with regard to the timing, form, or requirement for disclosures under Rule 26(a).

c.      Jelly Belly submits that discovery should be conducted in accordance with the limitations set forth in the Federal Rules of Civil Procedure.

d.      Jelly Belly's proposed schedule for completion of discovery is set forth below in Paragraph 17.

1    Defendants propose the Court enter a Pretrial Order limiting disclosures and discovery to

2    the determination of the monetary relief to which Jelly Belly would be entitled if it were to

3    prevail on its claims as alleged in the Complaint.  If discovery is so limited, Defendants agree to

4    the schedule for completion of discovery proposed in Paragraph 17.

5    **9.    Class Actions**

6    The action is not a class action.

7    **10.    Related Cases**

8    There are two related cases currently pending:  Jelly Belly has filed a complaint against

9    Aran in the Federal Court of Canada, on grounds similar to those in the instant case.  That case is

10    captioned *Jelly Belly Candy Company v. Aran Candy Ltd.*, Federal Court File No. T-1875-07.

11    Jelly Belly has also filed a complaint on similar grounds against Aran in the United Kingdom,

12    captioned *Jelly Belly Candy Company v. Aran Candy Ltd.*, Particulars of Claim No.

13    HC07C03031.  Both actions are in the early stages, with case deadlines previously extended by

14    the respective courts through July 14, 2008, while Jelly Belly and Aran continued settlement

15    negotiations.  Further, there has been no discovery in either action.  Aran's statement of defense is

16    pending in the Canadian action.  In the U.K. action, the initial Case Management Conference is

17    pending and the parties will be exchanging their proposals for case management in the coming

18    weeks to submit to the court.

19    **11.    Relief**

20    Jelly Belly seeks declaratory relief, injunctive relief, an accounting by Defendants,

21    damages, treble damages, exemplary damages, costs, attorney fees, expenses, and an order for the

22    destruction of infringing articles.  Because no discovery has yet been taken in this case, Jelly

23    Belly is not able to calculate the amount of its damages at the present time.

24    As explained more fully above, Defendants will consent to the injunction sought by the

25    Complaint as set forth above, including destruction of any allegedly infringing items in the United

26    States in Defendants' possession, and to an accounting and disgorgement from Defendants to

27    which Jelly Belly would be entitled if it were to prevail on its claims as alleged in the Complaint.

28

**12.    Settlement and ADR**

The parties have attempted to resolve their dispute both informally over a long period of time and, more recently, through participation in a private mediation before the Hon. Edward A. Infante (Ret.) of JAMS.

Defendants note that, although the process did not result in a signed agreement, the parties did negotiate a settlement draft in which they agreed on all but a very few terms.  Further, given the narrow scope issues remaining to be litigated, Defendants submit that the prospect for saving the parties' and the Court's resources warrants referral to a Magistrate Judge for further settlement discussions.

**13.    Consent to Magistrate Judge For All Purposes**

Jelly Belly does not consent to a magistrate judge for all purposes.  Defendants consent to a magistrate judge for all purposes.

**14.    Other References**

As no settlement was reached, Jelly Belly believes that a case schedule should now be imposed and that the lawsuit should proceed.

**15.    Narrowing of Issues**

At this time, Jelly Belly is not aware of any issues that can be narrowed.

As explained more fully above, Defendants request that the Court, pursuant to Rule 16, issue a Pretrial Order limiting discoverable issues to the determination of the monetary relief to which Jelly Belly would be entitled if it were to prevail on its claims as alleged in the Complaint.

**16.    Expedited Schedule**

Plaintiff does not believe this is the type of case that can be handled on an expedited basis with streamlined procedures.  Defendants believe that if the scope of the case is narrowed as suggested herein by Defendants, the case would be suitable for expedited resolution.

**17.    Scheduling**

Jelly Belly proposes that the following dates be imposed, which are the same as those provided in the Parties' Case Management Statement filed February 29, 2008:

| Fact Discovery Cutoff: | 12/10/08 |
|---|---|
| Exchange of Expert Witness Reports on Issues on which the Disclosing Party Bears the Burden of Proof: | 02/01/09 |
| Exchange of Rebuttal Expert Witness Reports on Issues on which the Disclosing Party Does Not Bear the Burden of Proof: | 03/02/09 |
| Expert Discovery Cutoff: | 04/02/09 |
| Last Court Date to File Dispositive Motions | 05/04/09 |
| Last Court Date to File Oppositions to Dispositive Motions | 05/18/09 |
| Last Court Date to File Replies in Support of Dispositive Motions | 06/01/09 |
| Last Date for Hearing of Dispositive Motions: | 06/15/09 |
| Final Pretrial Conference Date: | 07/13/09 |
| Trial Date: | 08/03/09 |

As explained more fully above, Defendants request that the Court, pursuant to Rule 16, issue a Pretrial Order limiting discoverable issues to the determination of the monetary relief to which Jelly Belly would be entitled if it were to prevail on its claims as alleged in the Complaint. If the scope of the case is so limited, Defendants agree to the above dates.

**18.** **Trial**

The case will be tried by jury. Jelly Belly expects that the trial will last 7-10 days.

As explained more fully above, Defendants propose the Court enter a Pretrial Order limiting discoverable issues to the determination of the monetary relief to which Jelly Belly would be entitled if it were to prevail on its claims as alleged in the Complaint. With the case so limited, Defendants believe the trial on this remaining issue would last no more than one day.

**19.** **Disclosure of Non-party Interested Entities or Persons**

The parties have filed the requisite "Certificate of Interested Entities or Persons."

1    **20.**    **Other**

2            The parties are not aware of any matters, other than those set forth herein, that may

3    facilitate the just, speedy and inexpensive disposition of this matter.

4

5    Dated: August 18, 2008                KAREN VOGEL WEIL
                                           JONATHAN A. HYMAN
6                                          REZA MIRZAIE
                                           KNOBBE, MARTENS, OLSON & BEAR, LLP
7

8                                          By:    /s/ Karen Vogel Weil
                                                  KAREN VOGEL WEIL
9
                                           Attorneys for Plaintiff
10                                         JELLY BELLY CANDY COMPANY

11   Dated: August 18, 2008                DOUGLAS L. HENDRICKS
                                           CATHARINE B. BAKER
12                                         MORRISON & FOERSTER LLP

13

14                                         By:    /s/ Douglas L. Hendricks
                                                  DOUGLAS L. HENDRICKS
15
                                           Attorneys for Defendants
16                                         ARAN CANDY LTD. AND
                                           SWEETSTALL.COM LTD.

17

18

19

20

21

22

23

24

25

26

27

28

1

**[Plaintiff's Proposed] CASE MANAGEMENT ORDER**

2      The Case Management Statement and Proposed Order are hereby adopted by the Court as

3   the Case Management Order for this case and the parties are ordered to comply with this Order.

4

**[Defendants' Proposed] CASE MANAGEMENT ORDER**

5      WHEREAS, Defendants are willing to stipulate to entry of a permanent injunction and to

6   an accounting and disgorgement of profits on the terms provided above,

7      IT IS ORDERED that initial disclosures and discovery shall be limited to the issue of

8   determining the monetary relief to which Jelly Belly would be entitled were it to prevail on its

9   claims as alleged in the Complaint, and the defenses thereto, on the following schedule:

10

| | |
|---|---|
| Initial Disclosures under Fed. R. Civ. P. 26. | 30 days from entry of this Order |
| Fact Discovery Cutoff: | 12/10/08 |
| Exchange of Expert Witness Reports on Issues on which the Disclosing Party Bears the Burden of Proof: | 02/01/09 |
| Exchange of Rebuttal Expert Witness Reports on Issues on which the Disclosing Party Does Not Bear the Burden of Proof: | 03/02/09 |
| Expert Discovery Cutoff: | 04/02/09 |
| Last Court Date to File Dispositive Motions | 05/04/09 |
| Last Court Date to File Oppositions to Dispositive Motions | 05/18/09 |
| Last Court Date to File Replies in Support of Dispositive Motions | 06/01/09 |
| Last Date for Hearing of Dispositive Motions: | 06/15/09 |
| Final Pretrial Conference Date: | 07/13/09 |
| Trial Date: | 08/03/09 |

26      IT IS SO ORDERED.

27   Dated: _____, 2008

28                                         _____
                                                The Honorable Marilyn Hall Patel

1

## GENERAL ORDER 45 ATTESTATION

2      I, Douglas L Hendricks, am the ECF User whose ID and password are being used to file

3   this Supplemental Case Management Statement.  In compliance with General Order 45, X.B., I

4   hereby attest that Karen Vogel Weil has concurred in this filing.

5   Dated:  August 18, 2008                    MORRISON & FOERSTER LLP

6

7                                        By:  /s/ Douglas L. Hendricks
                                              Douglas L. Hendricks
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28